**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna Sohler,<br><br>             Plaintiff,<br><br>v.<br><br>Alexandre Benjo, *et al.*,<br><br>             Defendants. | No. CV-20-01991-PHX-JJT<br><br>**ORDER** |

At issue is Defendants La Paz Regional Hospital, Monica Poehner, and Hanna Hoffman's Motion to Dismiss (Doc. 43, MTD), to which Plaintiff Donna Sohler filed a Response (Doc. 44, Resp.) and Defendants filed a Reply (Doc. 48). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

**I.     BACKGROUND**

Plaintiff Donna Sohler brings this lawsuit in connection with the events surrounding her husband, Ronald Sohler's, death.

On October 11, 2018, Defendant Doctor Alexandre Benjo, M.D. ("Dr. Benjo") performed a left cardiac catheterization on Ronald Sohler at Defendant La Paz Regional Hospital.[1] ("La Paz") (Third Amended Complaint ("TAC") ¶ 16.) Defendants Monica Poehner, R.N. and Hanna Hoffman, R.N. assisted Dr. Benjo with the procedure. (TAC ¶ 17.) Plaintiff alleges that during the procedure, Dr. Benjo injected dye into the catheter

---

[1] Dr. Benjo is not part of the instant Motion to Dismiss.

to test its position and noticed an air embolus in the left main. (TAC ¶ 19.) Dr. Benjo took multiple steps to remove the air embolus but Mr. Sohler went into cardiac arrest. (TAC ¶ 20.) Dr. Benjo called for the code response team, who administered CPR but unfortunately could not stabilize Mr. Sohler. (TAC ¶ 21.) After one hour, Mr. Sohler was pronounced dead. (TAC ¶ 21.) Dr. Benjo recorded the majority of these events in his procedure notes, including 1) the existence of the air embolus; 2) the steps he took to fix it; 3) Mr. Sohler's cardiac arrest; 4) the attempted CPR; and 5) the possibility that the contrast injector's failure caused the air embolus. (TAC ¶¶ 19-22.)

Dr. Benjo met with Plaintiff immediately following her husband's death. (TAC ¶ 29.) Ms. Poehner, Ms. Hoffman, and approximately seven other La Paz employees were also present for the conversation. (TAC ¶ 84.) Plaintiff alleges that Dr. Benjo told her that Mr. Sohler died during the procedure due to a massive heart attack but failed to inform her that he had inadvertently injected air into her husband during the procedure or that the ACIST CVi contrast injector had allegedly failed and injected air. (TAC ¶ 29.) Neither Ms. Poehner nor Ms. Hoffman objected to Mr. Benjo's statements, and their body language indicated that they agreed with the information he provided to Plaintiff. (TAC ¶ 84.) Based on this conversation with Dr. Benjo as well as the apparent approval of the Defendants, Plaintiff believed that her husband died of natural causes. (TAC ¶¶ 29, 84.)

Subsequently, Ronald Parker, M.D. conducted a medical examination of Mr. Sohler. He concluded that Mr. Sohler died of natural causes attributed to cardiovascular collapse. (TAC ¶¶ 31-32.) Based on information provided by Dr. Benjo, Ms. Poehner, and Ms. Hoffman, Dr. Parker determined that an autopsy was unnecessary. (TAC ¶¶ 34-35.) Plaintiff received Mr. Sohler's death certificate containing Dr. Parker's findings, which reinforced her belief that Mr. Sohler died of natural causes. (TAC ¶¶ 39-40.)

After Mr. Sohler's death, La Paz contacted ACIST to report that the ACIST CVi contrast injector had failed. (TAC ¶ 27.) On January 14, 2019, a La Paz Hospital employee, Rick Graybeal, met with a clinical specialist from ACIST. Mr. Graybeal explained that immediately preceding Mr. Sohler's death, Dr. Benjo swapped out the diagnostic catheter

for a guide catheter and did a test injection that introduced air into the catheter, which caused Mr. Sohler to arrest. (TAC ¶ 28.) Mr. Graybeal obtained this information from Dr. Benjo and the Hospital Staff. (TAC ¶ 28.) ACIST Medical Systems, Inc. ultimately determined that the ACIST CVi contrast injector had worked according to specifications and that Dr. Benjo and Defendants' error caused the air injection into Mr. Sohler. (TAC ¶ 30.)

On January 27, 2020 and May 20, 2020, Dr. Benjo and La Paz respectively provided Plaintiff with their records for Mr. Sohler. (TAC ¶ 43.) The medical records indicated that Mr. Sohler died due to the introduction of air during his catheterization procedure and the alleged failure of the contrast injector device. Plaintiff was unaware of these causes of death until she received the medical records. (TAC ¶¶ 42-43.)

Plaintiff filed her initial Complaint on October 14, 2020 for wrongful death and other related claims. (Doc. 1) She filed her First Amended Complaint (Doc. 6) one day later and subsequently filed a Second Amended Complaint on October 29, 2020 naming multiple Defendants, including Dr. Benjo, La Paz, Ms. Poehner, and Ms. Hoffman (Doc. 11). On January 11, 2021, La Paz, Ms. Poehner, and Ms. Hoffman (collectively, "Defendants") moved to dismiss the Second Amended Complaint (Doc. 30). Plaintiff then filed the operative Third Amended Complaint, which brought claims against Dr. Benjo and Defendants for wrongful death, loss of consortium, and fraud. It also brought claims against Defendants for Aiding and Abetting Fraud as well as Fraudulent Concealment. Defendants filed the instant Motion to Dismiss Plaintiff's claims for Fraud, Aiding and Abetting Fraud, and Fraudulent Concealment. Defendants additionally argued that upon the dismissal of these claims, the other claims should be dismissed because Plaintiff did not file her initial Complaint within the Statute of Limitations.

## II.     LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

In ruling upon a motion to dismiss for failure to state claim, a court may consider only the complaint, any exhibits properly included in the complaint, and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### III. ANALYSIS

#### A. Statute of Limitations

Defendants argue that Plaintiff is time-barred from asserting her claims because the statute of limitations had run on Plaintiff's claims. In response, Plaintiff contends that the statute of limitations was tolled due to the discovery rule as well as Dr. Benjo and Defendants' fraudulent concealment of their negligent actions.

##### 1. Discovery Rule

A complaint for personal injury or wrongful death must be filed within two years after the cause of action "accrues." A.R.S. § 12-542. In a case where the "complaint shows on its face that the cause of action is barred by the statute of limitations, the burden is on the plaintiff to show the statute should be tolled." *Ulibarri v. Gersentberger*, 871 P.2d 698,

702 (Ariz. Ct. App. 1993) (citing *Cooney v. Phoenix Newspapers, Inc.*, 770 P.2d 1185, 1187 (Ariz. Ct. App. 1989)). The "discovery rule" can be applied to toll the accrual of an action where the "injury or the act causing the injury, or both, have been difficult for the plaintiff to detect." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (Ariz. 1995) (quoting *April Enters. V. KTTV*, 195 Cal. Rptr. 421, 436 (Ct. App. 1983)). Under the discovery rule, "a cause of action 'accrues' when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a particular defendant's conduct." *Lawhon v. L.B.J. Institutional Supply, Inc.*, 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988) (emphasis in original). "The plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Walk v. Ring*, 44 P.3d 990, 996 (2002). However, "it is not enough that a plaintiff comprehends a 'what;' there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Id.*

Here, the discovery rule applies to toll the statute of limitations. Plaintiff alleges that Dr. Benjo told her that Mr. Sohler died of natural causes. The death certificate prepared by Dr. Parker stated the same. Plaintiff first learned of the air embolus when she received Mr. Sohler's medical records on January 27, 2020. Therefore, Plaintiff plausibly alleged that she was unaware of Defendants' wrongdoing prior to that date.

Defendants' Motion to Dismiss mistakenly conflates tolling due to the discovery rule with fraudulent concealment tolling. Defendants contend that because Plaintiff cannot state a claim for fraud against named Defendants, the statute of limitations should not be tolled. However, application of the discovery rule does not depend on a defendant's fraudulent conduct. Rather, the discovery rule hinges on when a reasonable person discovers or should have discovered a defendant's negligent conduct. *See Lawhon*, 765 P.2d at 1007. Defendants finally address the discovery rule in their Reply with one paragraph arguing that its application "relies on the already debunked theory that La Paz fraudulently concealed information from Sohler." (Reply at 6.) Not so. Plaintiff's Third

- 5 -

Amended Complaint contains an entire section labelled "Discovery Rule Tolling" that alleges sufficient facts to show: 1) that Plaintiff reasonably was unaware that "a wrong had occurred" resulting in her husband's death; and 2) a reasonable person would not have "been on notice to investigate." *Id.*

Defendants briefly argue that Plaintiff had a responsibility to perform a timely investigation of the circumstances of her husband's death and thus should have obtained the medical records before she did. (MTD at 2.) The Court disagrees. Plaintiff reasonably relied on Dr. Benjo as well as Dr. Parker's report. *See Id.* While she knew that her husband died, she was unaware of what allegedly caused his death or who was at fault. Therefore, Plaintiff was not on notice to investigate and obtain the medical records.

Finally, Defendants contend that because Plaintiff learned of the air embolus prior to the running of the statute of limitations, she had sufficient time to file the lawsuit and thus her claim is time barred. (MTD at 3.) This is not how tolling works. The discovery rule "postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when [it] discovers (or reasonably should discover) it has been injured." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). Here, Plaintiff plausibly alleged that did not discover Defendants' wrongful conduct until Dr. Benjo provided her the medical records on January 27, 2020. Therefore, the statute of limitations on all claims arising from Mr. Sohler's death did not begin to run until that date. Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint in its entirety.

### 2.     **Fraudulent Concealment**

Additionally, the Court finds that fraudulent concealment tolls the statute of limitations. In Arizona, the doctrine of fraudulent concealment provides that the statute of limitations on a claim may be tolled if a plaintiff can demonstrate that "the defendant concealed a cause of action thereby preventing the plaintiff from timely filing the claim." *Florez v. Sargeant*, 917 P.2d 250, 257 (Ariz. 1996). Defendants argue that Plaintiff cannot state a cause of action against Defendants for fraud and thus fraudulent concealment does

not toll the statute of limitations. However, Defendants neither contest Plaintiff's fraud claims against Dr. Benjo nor whether Dr. Benjo fraudulently concealed facts from Plaintiff preventing her from discovering Defendants' alleged wrongful actions. Because these claims against Dr. Benjo will survive the instant Motion to Dismiss regardless of this Court's findings, Plaintiff's allegations that fraudulent concealment tolls the statute of limitations against all named Defendants survives as well. Defendants appear to argue that fraudulent concealment only tolls the statute of limitations for claims against the defendant or defendants who perpetrated the fraud but cite no authority to support this proposition.

### B.     Count 4 – Common Law Fraud

Plaintiff brings claims against Defendants for fraud (Count 4), aiding and abetting fraud (Count 7), and fraudulent concealment (Count 8). Plaintiff alleges that Dr. Benjo committed fraud when he informed Plaintiff that Mr. Sohler died of a heart attack without discussing the air embolus. Her claims against Defendants arise from their alleged conduct during this conversation as well as Defendants' allegedly inadequate disclosures to Dr. Parker. Arizona law provides that the elements of fraud are as follows: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury. *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982). The cause of action for fraud does not require a duty owed by the speaker to the hearer. *See id.*

Rule 9(b) requires that, in alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." This pleading standard also applies to claims for misrepresentation. *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1028 (D. Ariz. 2003) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1118 (9th Cir. 2003)). To meet the Rule 9(b) particularity requirement, a plaintiff "must include statements regarding the time, place, and nature of the alleged fraudulent activities," and "'mere conclusory allegations of fraud are insufficient.'" *In re GlenFed, Inc. Sec. Litig.*,

42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*, Private Secs. Litig. Reform Act of 1995, Pub. Law 104-67 (codified at 15 U.S.C. § 78u-4 (1995)). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct alleged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Furthermore,

> a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

*GlenFed*, 42 F.3d at 1548.

To begin with, Counts 4 and 8 are redundant because fraudulent concealment is a species of common law fraud. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund* explained:

> [T]here are three distinct classes of fraud: misrepresentation, concealment, and non-disclosure. Liability for fraudulent misrepresentation occurs under § 525 of the RESTATEMENT (SECOND) OF TORTS and lies against '[o]ne who fraudulently makes a misrepresentation of fact ... for the purpose of inducing another to act or to refrain from action....' In contrast, liability for nondisclosure occurs under § 551 of the RESTATEMENT (SECOND) OF TORTS and lies against '[o]ne who fails to disclose to another a fact ... if, but only if, he is under a duty to the other ... to disclose the matter in question.' Liability for fraudulent concealment occurs under § 550 of the RESTATEMENT (SECOND) OF TORTS and lies against a 'party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information.'

38 P.3d 12, 34 n. 22 (Ariz. 2002), *as corrected* (Apr. 9, 2002). Plaintiff acknowledges as much. In response to Defendants' argument that Count 4 should be dismissed because they did not make a specific representation to Plaintiff, Plaintiff cites *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) for the proposition that "fraudulent concealment – without any misrepresentation or duty to disclose – can constitute common law fraud." (Resp. at 10.) In fact, Plaintiff spends the majority of her Response on Count 4 explaining why Defendants' actions constituted fraudulent concealment. (Resp. at 9-11.) Because

- 8 -

Counts 4 and 8 of Plaintiff's Complaint allege the same cause of action – fraudulent concealment – with regards to the instant Defendants, the Court will dismiss Count 4 against La Paz, Ms. Poehner, and Ms. Hoffman.

### C. Count 7 – Aiding and Abetting Fraud

Under Arizona law, "claims of aiding and abetting tortious conduct require proof of three elements: "1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; 2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and 3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1170 (D. Ariz. 2014) (citing *Wells Fargo Bank*, 38 P.3d at 23). The party charged with aiding and abetting must have knowledge of the underlying tortious violation, which can be inferred from the circumstances. *Id*. "Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Id.*

Here, Plaintiff has not sufficiently alleged that Defendants' conduct substantially assisted Dr. Benjo's fraud. Plaintiff alleges that Defendants are liable for aiding and abetting because their body language, silence, and deference indicated they agreed with Dr. Benjo's explanation of Mr. Sohler's death. (TAC ¶ 116.) The parties dispute whether silence or inaction can constitute substantial assistance but neither party cites relevant caselaw in support of its position. While there does not appear to be directly analogous caselaw, courts have found in financial fraud cases that inaction constitutes substantial assistance if defendant owes plaintiff a fiduciary duty. *See e.g. Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 652 (9th Cir. 1988) ("defendants may be liable for aiding and abetting based on their silence if they have a duty to disclose knowledge that would be material to investors."); *In re Sharp Intern. Corp.*, 403 F.3d 43, 50 (2d Cir. 2005). While doctors owe their patients a fiduciary duty, *Walk*, 44 P.3d at 999; *Thompson v. Wiener*, Case No. 08-CV-991-PHX-GMS, 2008 WL 5068945, at *9 (D. Ariz. Nov. 25, 2008), Arizona courts have not determined whether that fiduciary duty extends to a nurse.

However, out-of-circuit courts have consistently held that a nurse does not owe a fiduciary duty to the patient. *See e.g. Nutty v. Jewish Hosp.*, 571 F. Supp. 1050, 1052-54 (S.D. Ill. 1983) (explaining that nurse did not have fiduciary relationship with patient); *Bourassa v. LaFortune*, 711 F. Supp. 43, 48 (D. Mass 1989) (same).

Plaintiff argues that nurses owe their patients a fiduciary duty pursuant to the Arizona Nurse Practice Act, which states that nurses shall "[p]rotect confidential information unless obligated by law to disclose the information" and "advocate on behalf of a client to promote the client's best interest." Ariz. Admin. Code Section 4-19-402(B)(6), (11).[2] This statute does not create a fiduciary duty. And to the extent Plaintiff argues that a nurse's duty to promote her client's best interest means that Defendants' inaction constitutes substantial assistance, the Court declines to endorse such unprecedented expansion of aiding and abetting liability. Plaintiff fails to state a claim for aiding and abetting fraud.

### D. Count 8 – Fraudulent Concealment

Likewise, the Court finds that Plaintiff failed to adequately plead a claim for fraudulent concealment. Under Arizona law, a cause of action for fraudulent concealment arises when one party "by concealment or other action intentionally prevents the other from acquiring material information." *Wells Fargo Bank*, 38 P.3d at 34. Plaintiff spends part of her Response arguing that Defendants owed her a fiduciary duty. (Resp. at 17) However, Plaintiff need not allege a fiduciary duty in order to state a claim for fraudulent concealment. *Id.* At 21-22, 35-36. Rather, Plaintiff must allege "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Id.* at 35 (quoting *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000)) (internal quotation marks omitted). Once again, Plaintiff's allegations point only to Defendants' silence, deference, and body language during the meeting with Plaintiff. (TAC ¶ 123.) Plaintiff alleges that Defendants "had an opportunity to correct Dr. Benjo and to provide Plaintiff and Dr. Parker with the truth… but they elected to either

---

[2] The parties addressed whether nurses owe their patients a fiduciary duty in relation to Plaintiff's fraudulent concealment claim.

(sic) remain silent about the true cause of death." (TAC ¶ 125.) These allegations indicate inaction and silence rather than the "deceptive acts or contrivances" necessary to state a claim for fraudulent concealment.

Moreover, Plaintiff's allegation regarding Defendants' body language is insufficient to state a claim under Rule 9(b)'s heightened pleading standard. Rule 9(b) requires that Plaintiff "state with particularity the circumstances constituting fraud or mistake" and explain "what is false or misleading about a statement." *GlenFed*, 42 F.3d at 1548. Here, Plaintiff only alleges that Defendants' body language indicated approval and consent of Dr. Benjo's explanation but does not provide any further details. Without more, this general, conclusory allegation does not meet the pleading requirements of Rule 9(b). For these reasons, Count 8 shall be dismissed.

### E. Dr. Parker and A.R.S. § 11-593

Finally, Plaintiff appears to assert that Defendants committed fraud because they lied or withheld information from Dr. Parker regarding Mr. Sohler's true cause of death. (TAC ¶¶ 33-34.) However, Plaintiff does not allege any additional facts except that Dr. Parker wrongly concluded that Mr. Sohler died of natural causes, which implies that they provided him false information. (TAC ¶¶ 33, 37.) Such conclusory and non-specific allegations are insufficient to state a claim for fraud under Rules 8 and 12, much less Rule 9's heightened pleading standard.

Based on Dr. Parker's allegedly mistaken conclusion, Plaintiff also alleges that Defendants misinformed a peace officer in violation of A.R.S. § 11-593.[3] Again, Plaintiff's allegations are insufficient to state a claim under Rules 8, 9, and 12.

### F. Leave to Amend

If a defective complaint can be cured, the plaintiff is entitled to amend the complaint before her claims are dismissed with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

---

[3] A.R.S. § 11-593 requires "[a]ny person having knowledge of the occurrence of the death of a human being including a fetal death that is required to be reported pursuant to Subsection B of this section shall promptly notify the nearest peace officer of all information in the person's possession regarding the death and the circumstances surrounding it."

1   Cir. 2000). In her Response, Plaintiff neither identified any additional factual allegations nor
2   requested leave to amend, and it does not appear that yet another – fourth – amendment can
3   cure Plaintiff's fraud claims against Defendants. Accordingly, the Court will dismiss Counts
4   4, 7, and 8 with prejudice.

5         **IT IS THEREFORE ORDERED** granting in part, denying in part Defendants'
6   Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 43);

7         **IT IS FURTHER ORDERED** dismissing with prejudice Counts 4, 7, and 8 against
8   Defendants La Paz Regional Hospital, Monica Poehner, and Hanna Hoffman;

9         **IT IS FURTHER ORDERED** that Counts 3 and 6 remain against Defendants La
10  Paz Regional Hospital, Monica Poehner, and Hanna Hoffman.

11        **IT IS FURTHER ORDERED** denying as moot Defendants La Paz Regional
12  Hospital, Monica Poehner and Hanna Hoffman's Motion to Dismiss (Doc. 30).

13        Dated this 23rd day of September, 2021.

15  Honorable John J. Tuchi
    United States District Judge