**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna Sohler, | No. CV-20-01991-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Alexandre Benjo, *et al.*, | |
| Defendants. | |

At issue is Defendants Alexandre Benjo, M.D. ("Dr. Benjo") and Lakeside Heart and Vascular Center, P.L.L.C.'s ("Lakeside") Motion for Partial Summary Judgment (Doc. 99), to which Plaintiff Donna Sohler ("Ms. Sohler") filed a Response (Doc. 104), and Mr. Benjo and Lakeside filed a Reply (Doc. 110). Additionally, the Court considers Defendant La Paz Regional Hospital's ("La Paz") Motion for Summary Judgment (Doc. 147), to which Plaintiff filed a Response (Doc. 153, Resp.), and La Paz filed a Reply (Doc. 162, Reply). Also at issue is Defendant La Paz's Motion to Strike Plaintiff's Untimely Disclosed Expert Witness, William L. Nellis and Corresponding Related Materials (Doc. 149), to which Plaintiff responded (Doc. 155), and La Paz replied (Doc. 161). Finally, the Court considers Plaintiff's Motion for Reconsideration of the Court's Order Dismissing Counts 4, 7, and 8 of Plaintiff's Third Amended Complaint (Doc. 116). The Court finds these matters suitable for resolution without oral argument. *See* LRCiv 7.2(f).

1    **I.    BACKGROUND**

2        This lawsuit arises from the events surrounding the death of Plaintiff's husband,

3    Ronald Sohler ("Mr. Sohler"). On October 11, 2018, Defendant Dr. Benjo performed a

4    non-emergent cardiac catheterization procedure on Mr. Sohler at La Paz Regional Hospital,

5    which Plaintiff also names as a Defendant. (Plaintiff's Statement of Facts, Doc. 105 ¶ 3.)

6    Monica Poehner, R.N. ("Ms. Poehner") and Hanna Hoffman, R.N. ("Ms. Hoffman")

7    assisted Dr. Benjo with the procedure.[1] (Doc. 105 ¶ 3; Third Amended Complaint ("TAC")

8    ¶ 17.) During the procedure, Dr. Benjo injected dye into the catheter to test its position,

9    and while doing so noticed an air embolus in the catheter. (Doc. 105 ¶ 4.) Dr. Benjo took

10   steps to try to remove the air embolus, but the air was released into Mr. Sohler's heart,

11   causing him to go into cardiac arrest. (Doc. 105 ¶¶ 4-5; TAC ¶ 20.) Dr. Benjo called for

12   the code response team, who administered CPR but could not stabilize Mr. Sohler. (Doc.

13   105 ¶ 6.) Mr. Sohler died after 45 minutes of CPR failed. (Doc. 105 ¶ 6.) In his operative

14   note, Dr. Benjo recorded (1) the existence of the air embolus; (2) the steps he took to fix

15   it; (3) Mr. Sohler's cardiac arrest; (4) the attempted CPR; and (5) the possibility that the

16   contrast injector device's failure caused the air embolus, noting that the device "failed a

17   few times during the procedure and during the code." (TAC ¶¶ 19-22; Doc. 105 ¶ 7.)

18       Dr. Benjo met with Plaintiff immediately following Mr. Sohler's death, joined by

19   Ms. Poehner, Ms. Hoffman, and several other La Paz employees. (Doc. 105 ¶ 8.) Dr. Benjo

20   informed Plaintiff that Mr. Sohler had died during the catheterization procedure as the

21   result of a massive heart attack, but he did not inform her that he had inadvertently injected

22   air into her husband during the procedure, nor did he tell her that the contrast injector device

23   had allegedly failed. (Doc. 105 ¶ 8.) Based on this conversation with Dr. Benjo and the

24   body language of Ms. Poehner and Ms. Hoffman, which indicated their agreement with Dr.

25   Benjo's assessment, Plaintiff believed that Mr. Sohler had died of natural causes. (Doc.

26   105 ¶ 8.)

27

28   _____
     [1] Ms. Poehner and Ms. Hoffman were originally named as Defendants, but the parties have
     since stipulated to dismiss all claims against them with prejudice. (Doc. 145.)

Subsequently, Ronald Parker, M.D. ("Dr. Parker") conducted a medical examination of Mr. Sohler. (Doc. 105 ¶ 11.) Dr. Parker concluded that Mr. Sohler died of natural causes attributed to cardiovascular collapse, and on the basis of what was disclosed to him, determined that an autopsy was not necessary. (Doc. 105 ¶ 12.) On October 20, 2018, Plaintiff obtained a copy of Mr. Sohler's death certificate containing Dr. Parker's findings, which confirmed her belief that her husband had died of natural causes. (Doc. 105 ¶ 13.) On January 27, 2020, over 15 months later, Plaintiff obtained a copy of Mr. Sohler's medical records, from which she learned that he had died because air was injected into the catheter and the contrast injector device had allegedly failed. (Doc. 105 ¶ 14.)

On October 14, 2020, Plaintiff filed her initial complaint for wrongful death and other related claims. (Doc. 1.) Plaintiff filed the operative Third Amended Complaint on January 29, 2021. On September 23, 2021 the Court granted in part Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 43), and dismissed Counts 4, 7, and 8 against Defendants La Paz, Ms. Poehner, and Ms. Hoffman (Doc. 95). On October 26, 2021, Defendants Dr. Benjo and Lakeside moved for partial summary judgment on Plaintiff's Counts 1 and 6—wrongful death and loss of consortium. (Doc. 99.) On November 12, 2021, Defendant La Paz and then Defendants Ms. Poehner and Ms. Hoffman filed a Joinder (Doc. 108), to which Plaintiff filed a Response arguing that the document was procedurally flawed (Doc. 113). Then, on November 24, 2021, Plaintiff filed a Motion for Reconsideration on the Court's Order dismissing Counts 4, 7, and 8. (Doc. 116.) On May 13, 2022, the parties stipulated to dismiss all claims against Ms. Poehner and Ms. Hoffman with prejudice. (Doc. 145.) On May 16, 2022, Defendant La Paz moved for summary judgment on Plaintiff's Counts 1 and 6 (Doc. 147), and on May 17 La Paz moved to strike one of Plaintiff's expert witnesses, William L. Nellis (Doc. 149). The Court now resolves each motion.

## II.     MOTION FOR RECONSIDERATION

### A.     Legal Standard

Motions for reconsideration should be granted only in rare circumstances.

*Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003).

### B.    Analysis

Plaintiff moves the Court to reconsider its September 24, 2021 Order (Doc. 95), in which it dismissed Counts 4 (fraud), 7 (aiding and abetting fraud), and 8 (fraudulent concealment) (Doc. 116)[2]. Plaintiff claims that her Motion is premised on Defendants' disclosure of new facts that bear directly on her claims. (Doc. 116 at 1.)

According to Plaintiff, on November 18, 2021, Defendants Dr. Benjo and Lakeside disclosed a Supplemental Disclosure Statement, disclosing a response to a subpoena they had issued to Dr. Ronald Parker ("Dr. Parker"), the medical examiner for Mr. Sohler, in which they requested that Dr. Parker produce all medical records in his possession concerning Mr. Sohler. (Doc. 116 at 2, Ex. 1.) Subsequently, counsel for Dr. Benjo and Lakeside received a notice from the document service seeking Dr. Parker's records stating that there were no records to be produced. (Doc. 116, Ex. 1.) Plaintiff contends that this

---

[2] The Court dismissed Plaintiff's Counts 4, 7, and 8 against Defendants La Paz Regional Hospital, Ms. Poehner, and Ms. Hoffman, not Counts 3, 4, and 7, as Plaintiff writes in her Motion for Reconsideration. (*See* Doc. 95 at 12.) It appears that Plaintiff has misnumbered the claims in her Motion, so the Court uses the numbering it used in its Order, which is the same as the numbering in the TAC. In the TAC, Plaintiff's Count 4 is fraud, Count 7 is aiding and abetting fraud, and Count 8 is fraudulent concealment. Hereinafter, the Court refers to the claims accordingly.

1  information directly contradicts Defendants' claims that they had disclosed the hospital's

2  medical records for Mr. Sohler to Dr. Parker. (Docs. 116 at 3; 43 at 8-9.) It follows, Plaintiff

3  alleges, that Defendants intentionally withheld Mr. Sohler's hospital records from Dr.

4  Parker so that he would reach the "unwarranted conclusion" that Mr. Sohler died of natural

5  causes.  (Doc. 116 at 3.)

6  The Court denies Plaintiff's Motion for Reconsideration. The Court dismissed

7  Count 4 of Plaintiff's TAC because it alleged the same cause of action as Count 8—

8  fraudulent concealment. (Doc. 95 at 9.) The newly discovered evidence Plaintiff cites does

9  not alter this aspect of the Court's analysis. With respect to Count 7, the Court found that

10  Plaintiff failed to state a claim for aiding and abetting fraud because nurses do not owe

11  their patients a fiduciary duty. (Doc. 95 at 10.) Defendants' new disclosure has no effect

12  on this aspect of the Court's analysis either. Further, the parties have stipulated to dismiss

13  claims against Ms. Poehner and Ms. Hoffman. (Doc. 145.) Likewise, Count 8 of Plaintiff's

14  TAC names only Ms. Poehner and Ms. Hoffman. (TAC ¶¶ 121-127.) Because the parties

15  have stipulated to dismiss Ms. Poehner and Ms. Hoffman as defendants, the Court will not

16  reinstate Count 8.

17  **III.   MOTION TO STRIKE**

18      **A.   Legal Standard**

19  Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any

20  redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The

21  purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money

22  that must arise from litigating spurious issues by dispensing with those issues prior to trial."

23  *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983).

24      **B.   Analysis**

25  Defendant La Paz filed a Motion to Strike Plaintiff's Untimely Disclosed Expert

26  Witness, William L. Nellis and Corresponding Related Materials. (Doc. 149.) Defendant

27  argues that Plaintiff's disclosure of William Nellis ("Mr. Nellis") as an expert was not

28

timely under Federal Rule of Civil Procedure 26(a), Mr. Nellis is not a true rebuttal witness, and Plaintiff's actions were not justified or harmless under Rule 37(c).

Pursuant to the Court's Rule 16 Scheduling Order, Plaintiff was required to disclose all expert witnesses by November 23, 2021, and all rebuttal experts by March 1, 2022, however, Defendant acknowledges that the parties agreed by email to extend the March 1, 2022 deadline. (Doc. 61, Order; Doc. 149 at 2.) Plaintiff disclosed Mr. Nellis as an expert on May 10, 2022, long after the March 1 deadline. (Doc. 149 at 2.) Purportedly, Mr. Nellis is a rebuttal expert to La Paz's disclosed employees, and he will opine as to the standard of care of La Paz and whether the actions of La Paz and its employees played a causal role in Mr. Sohler's death. (Doc. 149 at 2.) Defendant asserts that Mr. Nellis does not rebut any opinion offered by Kirsten Kirgan, R.N. ("Ms.Kirgan"), its standard of care expert, and therefore is not a rebuttal expert. (Doc. 149 at 4-5, Exs. A and B.) Defendant points out that Rule 26(a)(2) limits rebuttal expert witness testimony to addressing opinions proffered by another party's disclosed expert witness, and does not allow for a rebuttal expert witness to offer rebuttal opinions to lay witness testimony, as Mr. Nellis does. (Doc. 161 at 5.) *See also Armer v. CSAA Gen. Ins. Co.*, No. CV-19-04402-PHX-DWL, 2020 WL 3078353, at *6 (D. Ariz. June 10, 2020), *reconsideration denied*, No. CV-19-04402-PHX-DWL, 2020 WL 3574525 (D. Ariz. July 1, 2020). According to Defendant, Mr. Nellis's testimony also represents the first indication that Plaintiff intends to bring a "theory of independent negligence, negligent credentialing or new expert on either of these issues." (Doc. 149 at 5.) Defendant points out that discovery has closed, and it is now unable to defend new allegations such as these.

In response, Plaintiff maintains that Mr. Nellis was timely disclosed. (Doc. 155 at 7.) The parties agreed that due to Defendant's late disclosure of Ms. Kirgan and its employee Sharon Bosler ("Ms. Bosler"), Plaintiff would have an extension for the disclosure of rebuttal experts. (Doc. 155 at 7, Ex. 4.) Ms. Bolser was disclosed as a witness for the first time on March 1, 2022 (the final day of fact discovery), deposed on April 21, 2022, and Mr. Nellis's rebuttal opinion was disclosed on May 10, 2022, within the 30-day

time frame agreed upon by the parties. (Doc. 155 at 3, 8.) Plaintiff also challenges Defendant's position that Mr. Nellis is not a rebuttal witness because he does not rebut any of Ms. Kirgan's opinions, and claims that Mr. Nellis's opinion serves to rebut the testimony of the hospital employees generally, not just those of Ms. Kirgan. (Doc. 155 at 8.) Additionally, Plaintiff argues that she did indeed plead independent claims of negligence against Defendant. (Doc. 155 at 9.) For example, in Count 1, Plaintiff's wrongful death claim, she alleges that Defendant committed acts of negligence, by and through its employees, that caused the death of Mr. Sohler. (TAC ¶¶ 52, 58.)

The Court agrees with Defendant that Mr. Nellis is not a rebuttal expert. Thus, his opinion was untimely disclosed. Under Rule 37(c), a party who fails to provide information or the identity of a witness is precluded from using that information or witness "unless the failure was substantially justified or is harmless." Here, Plaintiff's untimely disclosure of Mr. Nellis was not substantially justified, nor was it harmless. In his report, Mr. Nellis describes his role as "a rebuttal expert to testimony provided by employees of La Paz Regional Hospital, including CEO Kevin Brown, cath lab nurses Hanna Hoffman and Monica Poehner, scrub tech/radiology technician Sharon Bosler, and Ms. Bolser's supervisor, Rick Graybeal." (Doc. 149, Ex. 9 at 29.) None of these employees were disclosed as experts, and to the extent that they may have proffered expert opinions, such testimony will not be permitted at trial. (*See, e.g.*, Doc. 149, Ex. 2.) Thus, Mr. Nellis's untimely disclosure is not justified. Further, as Defendant notes, discovery has closed, and Defendant would be unable to address and respond to Mr. Nellis's proffered opinions with the witnesses that have given testimony. For these reasons, the Court will strike Mr. Nellis and all corresponding materials. However, the Court will not order further sanctions against Plaintiff. This is a discovery dispute masquerading as a Motion to Strike, and both parties' actions border on gamesman-like behaviors, which the Court will not tolerate.

1   **IV.    MOTIONS FOR SUMMARY JUDGMENT**

2       **A.    Legal Standard**

3           Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

4   appropriate when: (1) the movant shows that there is no genuine dispute as to any material

5   fact; and (2) after viewing the evidence most favorably to the non-moving party, the

6   movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

7   477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th

8   Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome

9   of the suit under governing [substantive] law will properly preclude the entry of summary

10  judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue"

11  of material fact arises only "if the evidence is such that a reasonable jury could return a

12  verdict for the nonmoving party." *Id.*

13          In considering a motion for summary judgment, the court must regard as true the

14  non-moving party's evidence, if it is supported by affidavits or other evidentiary material.

15  *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party

16  may not merely rest on its pleadings; it must produce some significant probative evidence

17  tending to contradict the moving party's allegations, thereby creating a material question

18  of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative

19  evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l*

20  *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

21          "A summary judgment motion cannot be defeated by relying solely on conclusory

22  allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

23  1989). "Summary judgment must be entered 'against a party who fails to make a showing

24  sufficient to establish the existence of an element essential to that party's case, and on

25  which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

26  1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

27

28

1    **B.    Dr. Benjo and Lakeside's Motion for Partial Summary Judgment**

2    Dr. Benjo and Lakeside, joined by La Paz[3], move for partial summary judgment on

3    Plaintiff's Counts 1 and 6. (*See generally* Docs. 99, 108.) Defendants reason that summary

4    judgment is appropriate because Plaintiff's claims are barred by the statute of limitations

5    set forth in A.R.S. § 12-542, which states that medical negligence and wrongful death

6    claims "shall be commenced and prosecuted within two years after the cause of action

7    accrues."

8    In its September 23, 2021 Order, the Court held that the "discovery rule" applied to

9    toll the statute of limitations. (Doc. 95.) The discovery rule can be applied to toll the accrual

10   of an action where the "injury or the act causing the injury, or both, have been difficult for

11   the plaintiff to detect." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898

12   P.2d 964, 967 (Ariz. 1995) (quoting *April Enters. v. KTTV*, 195 Cal. Rptr. 421, 436 (Ct.

13   App. 1983)). Under the discovery rule, "a cause of action 'accrues' when the plaintiff

14   discovers or by the exercise of reasonable diligence should have discovered that he or she

15   has been injured by a particular defendant's conduct." *Lawhon v. L.B.J. Institutional

16   Supply, Inc.*, 765 P.2d 1003, 1007 (Ariz. Ct. App. 1988).

17   Now, citing excerpts of Plaintiff's July 22, 2021 deposition, Defendants contend

18   that the discovery rule does not apply, because Plaintiff was on notice to investigate

19   potential claims against Defendants immediately upon Mr. Sohler's death. (*See generally*

20   Doc. 99; Deposition of Donna Sohler ("Sohler Dep."), Doc. 100, Ex. 1.) Defendants

21   acknowledge that Plaintiff did not know "all the facts" underlying her claim at the time of

22   Mr. Sohler's death, but note that the discovery rule does not require the plaintiff to know

23   all the facts underlying a claim—she is simply charged with reasonable notice if she

24   possesses the minimum requisite knowledge sufficient to identify that a wrong occurred

25   and caused an injury. *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998). Defendants point out

26

27   ───────────────

[3] Plaintiff filed a Response to La Paz's Joinder, in part alleging that it is procedurally
28   improper in that it is "styled as an independent motion for summary judgment." (Doc. 113.)
However, because the Court denies Defendants' Motion for the reasons set forth in this
section, it does not reach the issues raised by Plaintiff or La Paz.

that Plaintiff conceded during her deposition that she had concerns about possible medical negligence immediately following Mr. Sohler's death. (Sohler Dep. 80:7-81:11.)

In response, Plaintiff argues that Defendants take the statements she made during her deposition out of context. (*See generally* Doc. 104.) Plaintiff claims that in the portion of her deposition Defendants cite, she was not referring to concerns about medical negligence on the part of Dr. Benjo, but rather on the part of Dr. George Garcia ("Dr. Garcia"), Mr. Sohler's cardiologist, who Mr. Sohler had visited several days prior to his death. (Doc. 104 at 5, 9-10.) However, after receiving Mr. Sohler's hospital records on May 20, 2020, Plaintiff discovered that Dr. Garcia had not acted negligently, and even if he had, his negligence was superseded by the intervening negligence of Dr. Benjo. (Doc. 104 at 11-13; Doc. 105 ¶ 20.) Plaintiff bolsters her argument by pointing out that in Arizona, questions about when statutes of limitations have tolled are typically for the jury. *See, e.g.*, *Doe*, 955 P.2d at 961. Further, Plaintiff contends that Defendants' fraudulent concealment of the true cause of Mr. Sohler's death prevented the statute of limitations from tolling. (Doc. 104 at 7-9.) *See Acton v. Morrison*, 155 P.2d 782, 784 (1945) ("Fraud practiced to conceal a cause of action will prevent the running of the statue of limitations until its discovery."). Plaintiff claims that she relied on the affirmations of both Dr. Benjo and Mr. Parker that her husband died of natural causes. (Doc. 104 at 7.)

The Court finds that there is, at the very least, a genuine issue of material fact as to when Plaintiff was put on notice to investigate her husband's death. As discussed *supra*, new evidence suggests that La Paz may have intentionally withheld Mr. Sohler's medical records from Dr. Parker so that he would conclude that Mr. Sohler died of natural causes. While the Court found the new evidence insufficient for it to reinstate Plaintiff's Count 8 for fraudulent concealment because Ms. Poehner and Ms. Hoffman have been dismissed as defendants, it may present a material issue of fact as to whether fraudulent concealment took place for the purposes of tolling the statute of limitations. A jury could find that the failure to provide Mr. Sohler's medical records to Dr. Parker is an act of fraudulent concealment that prevented her duty to investigate from arising. Likewise, even if a jury

finds that no fraudulent concealment took place, it could nonetheless find that the discovery rule tolled the accrual of Plaintiff's cause of action. In fact, in *Walk v. Ring*, which Defendants cite, the Arizona Supreme Court recognized that there was a material issue of fact as to whether that plaintiff was put on reasonable notice to investigate. 44 P.3d 990, 998 (Ariz. 2002). There, much like in the present case, the plaintiff's doctor "assured her he had done nothing wrong." *Id.* The *Walk* Court reasoned that while the plaintiff's failure to question consulting doctors for information as to whether negligence could be involved could be perceived as a lack of diligence, "we do not believe it can be said as a matter of law that a reasonable person in this circumstance can be required to undertake such questioning or be held accountable for not doing so." *Id.* Such questions are appropriately left to a jury. Accordingly, Defendants' Motion for Partial Summary Judgment is denied.

### C.    La Paz's Motion for Summary Judgment

The basis for Defendant La Paz's Motion for Summary Judgment is not that Plaintiff cannot meet the burden for her wrongful death and loss of consortium claims. Instead, Defendant La Paz argues that with the dismissal of Ms. Poehner and Ms. Hoffman as Defendants, Plaintiff's claims against La Paz cannot survive, so she is improperly attempting to bring new claims against it through her expert, Mr. Nellis.[4] (*See generally* Docs. 147, 162.) La Paz claims that Plaintiff never pled an independent claim of negligence against it, and discovery has now closed. (Doc. 147 at 6.) La Paz also claims that Plaintiff never provided a preliminary expert witness affidavit setting forth an independent claim of medical negligence against La Paz, as required by A.R.S. § 12–2603, which requires an expert affidavit stating specific claims against a hospital entity, because the entity is a health provider defined by statute. (Doc. 147 at 6.) *See Amor v. Arizona*, No. CV-06-499-

---

[4] Many of La Paz's arguments in its Motion for Summary Judgment merely regurgitate those in its Motion to Strike (Doc. 149), which the Court ruled on *supra*. Namely, La Paz asserts that Plaintiff disclosed Mr. Nellis as an expert "six months after the deadline and one month after discovery had closed." (Doc. 147 at 8.) La Paz also claims that Mr. Nellis is not a true rebuttal witness, is not qualified to testify on a new theory of causation, and any opinion he offers about a lack of protocols and procedures pertaining to the injector equipment could not have caused or contributed to Mr. Sohler's death because Plaintiff's own causation expert opines that the equipment did not cause the air embolus or death. (Doc. 147 at 7-9.) The Court grants La Paz's Motion to Strike, so it does not repeat its analysis of Mr. Nellis here. Nor does it address Plaintiff's arguments on the same.

TUC-CKJ, 2010 WL 960379, at *7 (D. Ariz. Mar. 15, 2010). Although Plaintiff provided a preliminary expert witness affidavit regarding the nursing care, La Paz maintains that Plaintiff's nurse expert did not set forth any opinion supporting claims of independent negligence. (Doc. 147 at 7.)   La Paz also contends that Plaintiff failed to disclose an independent theory of liability against the hospital for negligent credentialing of Dr. Benjo in violation of Federal Rule of Civil Procedure 26(a)(1)(E). (Doc 147 at 7.)

In response, Plaintiff first asserts that Defendant's motion is procedurally improper. (Doc. 153 at 7.) Plaintiff contends that the Joinder Defendant previously filed was really a motion for summary judgment, and the Court's Scheduling Order explicitly states that leave of Court is required for a party to file more than one motion for summary judgment. (Doc. 153 at 7-8.) The Court denied the earlier motion for summary judgment, *supra*, and did not need to reach the arguments presented in La Paz's Joinder in doing so. As the Court sees it, the present motion is Defendant La Paz's first Motion for Summary Judgment, and it will consider the substance of the motion.

Second, Plaintiff claims that she pled independent claims of negligence against Defendant in the TAC. Count 1 of Plaintiff's TAC, for example, alleges that Defendant La Paz committed acts of negligence by and through its employees under the doctrine of *respondeat superior*. (TAC ¶ 55; Doc. 153 at 8.) Count 1 further alleges that "Defendants, and each of them, were negligent and careless in their medical care of Ronald Sohler," who died as a direct and proximate result of the Defendants' negligence. (TAC ¶ 62-63.) Plaintiff maintains that "[a] hospital can be held negligent "[i]f the medical staff [is] negligent in…. supervising its members." *Tucson Med. Ctr. v. Misevch*, 545 P.2d 958, 960 (1976). Plaintiff also maintains that she disclosed a preliminary affidavit as required by A.R.S. § 12–2603 in her Second Supplemental Disclosure Statement dated June 29, 2021. (Doc. 153 at 10.) While the affidavit set forth the negligence of the nurses who participated in Mr. Sohler's procedure, Plaintiff contends that their negligence is imputed to La Paz per *respondeat superior*. (Doc. 153 at 10.) According to Plaintiff, had Ms. Bolser been disclosed prior to the final day of fact discovery, Plaintiff's expert Meg Welch, R.N. ("Ms.

1   Welch") would have had an opportunity to further address Defendant La Paz's liability on

2   that issue before the discovery deadline. (Doc. 153 at 11.)

3          In *Kopp v Physician Grp. of Arizona, Inc.*, which Defendant cites in its Reply, the

4   Arizona Supreme Court reversed the lower courts, and held that the stipulated dismissal

5   with prejudice of the surgeon employed by the defendant hospital did not prevent the

6   plaintiffs from asserting claims for negligent hiring, credentialing, and supervision against

7   that hospital. 421 P.3d 149, 151-52 (Ariz. 2018). (*See* Doc. 161 at 8.) However, unlike in

8   *Kopp*, Plaintiff does not raise such claims in her TAC. On this issue, *Friedna v. Evans*,

9   which the *Kopp* Court cites for support, offers guidance. 622 P.2d 463, 466 (Ariz. 1980).

10  In *Friedna* the appellants took the position that because there were no allegations

11  concerning the hospital's negligent supervision of the doctor who caused the plaintiffs

12  injury in their amended complaint, the theory was waived. *Id.* However, the court noted

13  that in the amended complaint, the plaintiffs pled that "the operation was performed at the

14  hospital with its knowledge, aid, and assistance, and that the negligence of the defendants

15  was the proximate cause of the patient's injuries." *Id.* The court held that "such general

16  allegations of negligence, along with the evidence produced at the trial of this case, are

17  sufficient to support the hospital's liability based on the theory of negligent supervision."

18  *Id.* at 467.

19         Here, Plaintiff has raised allegations of negligence much like those of the plaintiff

20  in *Friedna*. The "true issue," in this case is not whether Defendant La Paz is vicariously

21  liable under a theory of *respondent superior*, but whether it should be held liable on a

22  theory of negligent supervision. *Id.* at 465; *see also Kopp*, 421 P.3d at 442. Arizona case

23  law directs the Court that it is immaterial that Plaintiff's claims against the nurse defendants

24  have been dismissed— "if there is an independent ground for finding the principal liable,

25  judgment can be entered against him." *Kopp*, 421 P.3d at 442 (citation omitted). However,

26  Plaintiff must nonetheless prove negligence on the part of the hospital employees to prevail

27  on the causation and damages elements of her claims against Defendant La Paz. *See id.* at

28  441 ("Plaintiffs must prove [dismissed surgeon's] negligence to establish the causation and

damages elements for their claims against the Hospital...”). The Court denies Defendant La Paz's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion for Reconsideration (Doc. 116).

**IT IS FURTHER ORDERED** granting Defendant La Paz's Motion to Strike (Doc. 149).

**IT IS FURTHER ORDERED** denying Defendants Dr. Benjo and Lakeside's Motion for Partial Summary Judgment (Doc. 99).

**IT IS FUTHER ORDERED** denying Defendant La Paz's Motion for Summary Judgment (Doc. 147).

**IT IS FURTHER ORDERED** that Plaintiff's Counts 1 and 6 will proceed to trial. The Court will set a pretrial conference by separate Order.

Dated this 27th day of September, 2022.

Honorable John J. Tuchi
United States District Judge